**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

---

DONNA L. WORTH,

Plaintiff,

vs.

CITY OF KALISPELL, a municipal corporation; MICHAEL BAKER, KENNETH BAUSKA, CHARLES HARBALL, TERRY MITTON, MARTHA RISCHOFF, JAMES PATRICK, individually and as employees of the City of Kalispell; MICK MORIN (owner of Wild Geese Gardens), individually and as a contracted vendor of the City of Kalispell; and ERIC LINDAUER, arbitrator,

Defendants.

CV 08-145-M-DWM-JCL

ORDER

---

Pending before the Court is Defendant Eric Lindauer's Motion to Dismiss filed under authority of Fed. R. Civ. P. 12(b)(1) and (6). For the reasons discussed below, the Court deems it appropriate to grant Lindauer's motion.

## I. BACKGROUND

Donna Worth commenced this action in October 2008 advancing legal claims stemming from the termination of her 15 years of employment with the City

of Kalispell. Worth originally worked as a "Parks Clerk" for the City of Kalispell, but in September 2001 she began working in a field position as a "Gardner/Forester". Worth states she was unable to perform the Gardner/Forester work due to two carpal tunnel surgeries and a complicating neck injury.

Worth alleges that during her period of employment as a Gardner/Forester she was subjected to numerous acts of discrimination committed by various Defendants. She describes numerous conflicts with her supervisors regarding her job performance, and she alleges some of the Defendants subjected her to various forms of harassment, abusive treatment, and intimidation. The gravamen of Worth's Amended Complaint, therefore, alleges that Defendants are liable for "disability discrimination, gender discrimination[, ...] political affiliation discrimination, and retaliation discrimination" in connection with her employment which caused various injuries, damages, and financial losses to her. Amended Complaint at ¶ V.

In May 2006 Worth was involved in a work-related confrontation with Defendant Mick Morin, the owner of a nursery in Kalispell which is a vendor to the City of Kalispell. As a result of the incident, the City of Kalispell cited Worth for her alleged inappropriate conduct during the confrontation. Although Worth disputed the allegations against her regarding the confrontation, in August 2006

Defendant James Patrick terminated Worth's employment due, in part, to her conduct in the confrontation.

Worth's allegations that Defendants discriminated against her, and her termination from employment were submitted to arbitration in April 2007. Worth alleges that during the arbitration hearing the arbitrator, Defendant Eric Lindauer, "verbally assured me my job back[.]" Amended Compl. ¶ IV.3.k. She alleges Lindauer recognized her job was physically demanding because he used to prune trees when he was younger, and he made statements indicating he wanted Worth's job returned to her. Worth alleges that Lindauer was aware of the evidence presented at the arbitration hearing reflecting the gender, disability, and political discrimination Defendants allegedly committed against her.

Despite the evidence of discrimination and Lindauer's comments suggesting his arbitration decision might be favorable to Worth, in his final written decision Lindauer concluded that the Defendants did not discriminate against Worth, and he upheld the City of Kalispell's decision to termination her from employment. Amended Compl. ¶ IV.3.k. Therefore, Worth alleges Lindauer, through his arbitration decision, "committed discrimination against me by ignoring the facts of the case, ignoring the discrimination witnessed to during [a]rbitration, and chang[ed] his mind in his written Order." Amended Compl. ¶ IV.2.g.

On a related note, Worth also alleges that Lindauer erased the tape recordings of the arbitration hearing. Amended Compl. ¶ IV.2.g. It is not clear from the allegations, however, whether Worth contends Lindauer is liable for his conduct in erasing the tapes.

## II. APPLICABLE LAW - MOTION TO DISMISS

A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). In addressing a Rule 12(b)(6) challenge the Court accepts all factual allegations in the complaint as true (*Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976)), and construes the pleading in the light most favorable to the nonmoving party. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only set forth a short and plain statement of the claim showing the pleader is entitled to relief, and it "does not need detailed factual allegations[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). A plaintiff must, however, set forth "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do[.]" *Id*. at 1965. Allegations must indicate the pleader has a right to relief, and they must rise above the level of mere speculation. *Id*. The pleading must at least set forth factual grounds supporting a plausible basis on which liability can be imposed, or it must set forth enough facts "to raise a reasonable expectation that discovery will reveal evidence of" a basis for liability. *Id*.

Nonetheless, dismissal can be granted if there is a lack of a cognizable legal theory or if there is an absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead initially. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Additionally, where a plaintiff is proceeding *pro se*, the court must liberally construe the allegations. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A *pro se* litigant's pleading is generally held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III. DISCUSSION

Lindauer moves to dismiss Worth's claims advanced against him on two grounds.[1] First, he contends the doctrine of "arbitral immunity" provides him with immunity from civil liability in this action and, thus, Worth's pleading is subject to dismissal under Fed. R. Civ. P. 12(b)(6). Second, Lindauer asserts Worth has failed to exhaust the administrative remedies available to her with respect to her claims of discrimination and, consequently, this action is subject to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Because the doctrine of arbitral immunity is dispositive in view of Worth's allegations the Court will not address the jurisdictional defense advanced by Lindauer.

The decisional law of the federal courts fully recognizes the propriety of affording arbitrators immunity from civil liability under the doctrine of arbitral immunity.

---

[1]In support of his Motion to Dismiss Lindauer has filed his own affidavit, together with a copy of his written Opinion and Order issued as a result of the arbitration proceedings. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court will exclude Lindauer's affidavit from its consideration of his Motion to Dismiss, and it will not convert his motion into one for summary judgment. The Court will instead consider only the matters as alleged in Worth's pleading, and the legal grounds in support of Lindauer's motion.

> [C]ase law dictates that arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings.

*Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (citations omitted). *See also United States v. City of Hayward*, 36 F.3d 832, 838 (9th Cir. 1994) (recognizing doctrine of arbitral immunity, but refusing to apply it to a defendant who was not the arbitrator). Specifically, arbitral immunity applies in situations, such as here, where a dispute is submitted to arbitration pursuant to the parties' collective bargaining agreement. *New England Cleaning Services, Inc. v. American Arbitration Association*, 199 F.3d 542, 543-45 (1st Cir. 1999)).

Arbitral immunity is based on the common law doctrine of judicial immunity. *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and its Locals 656 and 985 v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185 (6th Cir. 1983). That doctrine provides judicial officers with immunity to allow judges to act freely and without apprehension that he or she may suffer personal consequences as a result of a particular decision; a judicial officer must be protected from the threat of lawsuits and intimidation from litigants who are not satisfied with a judicial decision. *Id*.

The federal courts have extended the doctrine of judicial immunity to other public officials obligated to perform quasi-judicial functions, and the federal

courts view an arbitrator's function as quasi-judicial in nature. *International Union*, 701 F.2d at 1185. Therefore, an arbitrator is "functionally comparable" to a judicial officer and "is clothed with an immunity that is analogous to judicial immunity." *Id*. (citations omitted).

> The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners, to whom immunity is extended, generates the same need for independent judgment free from the threat of lawsuits. As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants. Because federal policy encourages arbitration and arbitrators are essential in furthering that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction.

*Wasyl, Inc.*, 813 F.2d at 1582. *See also International Union*, 701 F.2d at 1186 (reciting and affirming the numerous policy reasons supporting the extension of quasi-judicial immunity to arbitrators). "[A]rbitrators acting within their quasi-judicial duties are the functional equivalent of judges and, as such should be afforded similar protection." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007). Arbitral immunity is "essential to protect the decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants." *Id*. (quoting *New England Cleaning Services, Inc.*, 199 F.3d at 545).

The federal courts have consistently recognized the doctrine of arbitral immunity, and have insulated arbitrators from civil liability for their conduct in performing their duties as arbitrators. *See e.g. International Union*, 701 F.2d at 1186; *Wasyl, Inc.*, 813 F.2d at 1582; *Weinraub v. Glen Rauch Securities, Inc.*, 399 F. Supp. 2d 454, 464 (S.D.N.Y. 2005); *Smith v. Shell Chemical Co.*, 333 F. Supp. 2d 579, 588-89 (M.D. La. 2004). The doctrine has been "uniformly recognized and consistently followed[.]" *Howland v. United States Postal Service*, 209 F. Supp. 586, 592-93 (W.D.N.C. 2002). Arbitral immunity applies to an arbitrator's "performance of the function of resolving disputes between parties" and extends to "all acts within the scope of the arbitral process." *Id*. (citation and quotation omitted). The key issue with respect to the applicability of arbitral immunity is "whether the claim at issue arises out of a decisional act[,]" or, in other words, whether the claim seeks "to challenge the decisional act of an arbitrator[.]" *Pfannenstiel*, 477 F.3d at 1159.

Worth's allegations against Lindauer seek only to challenge the merits of the arbitration decision he rendered in favor of the City of Kalispell. The arguments Worth presents in her response brief confirm that she seeks only to challenge the validity of Lindauer's decision. Worth's Amended Complaint demonstrates she is simply dissatisfied with Lindauer's alleged discriminatory

decision, and she alleges his decision subjects Lindauer to liability for his own alleged discrimination against her. She alleges that through his decision "Lindauer committed gender, political and disability discrimination against me." Amended Compl. ¶ IV.2.g. Therefore, Worth's claims against Lindauer arise out of his arbitral function and his role in rendering an arbitration decision, and he is entitled to arbitral immunity from civil liability.

Also, to the extent Worth contends Lindauer is liable for his role in the loss of the tape recordings he made of the subject arbitration hearing, Lindauer similarly enjoys immunity from such liability. *Pfannenstiel*, 477 F.3d at 1159-60. Because the gravamen of Worth's claims against Lindauer challenges the merits of his arbitration decision, her claim regarding his alleged loss of the hearing tapes is nothing more "than a veiled attack on the decision rendered" against her. *Id*. at 1160 (concluding arbitration sponsor organization was entitled to arbitral immunity from claim alleging it lost evidence and hearing tapes following an arbitration hearing).

Worth argues that there exist exceptions to the doctrine of arbitral immunity. She believes, for example, that an arbitrator's misconduct, or misleading statements regarding what evidence was admitted into the arbitration record can subject the arbitrator to liability. Worth's Response at 8-10. Worth's

reliance upon the legal authority to which she cites in her brief, however, is misplaced. Worth relies on provisions of the Federal Arbitration Act (FAA) which simply set forth the various grounds on which a court can vacate or set aside an arbitration decision. Under the FAA, an arbitration award can be vacated on grounds establishing that, inter alia, the award was procured by fraud, or that the arbitrator engaged in misconduct. 9 U.S.C. § 10(a)(1) and (3); *Gulf Coast Industrial Workers Union v. Exxon Company, USA*, 70 F.3d 847, 850 (5th Cir. 1995). Thus, the legal authority on which Worth relies does not provide exceptions to the doctrine of arbitral immunity.

**IV. CONCLUSION**

All of Worth's legal claims against Lindauer seek to impose civil liability on him for his conduct in performing his duties as an arbitrator, and in rendering his arbitration decision. Accordingly, Lindauer is entitled to arbitral immunity from liability. Lindauer's Motion to Dismiss is GRANTED, and Worth's claims advanced against Lindauer are DISMISSED.

DATED this 2nd day of April, 2009.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge